IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMUEL ESPOSITO,

      Plaintiff,                              No. CIV S-10-2862 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                            ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands the case for payment of benefits.

I.      BACKGROUND

      Plaintiff formally applied for DIB on December 19, 2007, alleging that he had been disabled since October 25, 2007. Administrative Record ("AR") 81, 150. Plaintiff's application was initially denied on March 27, 2008, and upon reconsideration on November 19, 2008. *Id.* at 89, 97. On May 21, 2009, a hearing was held before administrative law judge ("ALJ") James

1

Mitchell. *Id.* at 28.  Plaintiff was represented by counsel at the hearing, at which he and a vocational expert (VE) testified.  *Id.* at 28-29.

The ALJ's November 25, 2009 decision found that plaintiff was not disabled at any time from the date of alleged onset of disability through the date of the decision.[1]  *Id.* at 15-27.  The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since October 25, 2007, the alleged onset date (20 CFG 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: degenerative joint disease of the left knee, carpal tunnel syndrom, obesity, depression, and obsessive compulsive disorder (20 CFR 404.1520(c)).
> ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

...

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant is able to lift 10 pounds occasionally and 5 pounds frequently. The claimant can stoop occasionally and sit frequently. The claimant is slightly limited in attention, concentration, understanding, and memory. His vision is diminished, but correctable and he is unlimited in hearing. He is slightly limited in overhead reaching with his right, dominant feature, with slightly meaning 6 hours or less per shift. The claimant's fine and gross manipulative abilities are slightly limited with respect to both extremities. He is slightly limited in his ability to perform simple, routine tasks. He has environmental limitations requiring occasional medication, with occasional meaning 3 times a day or less. The claimant can have unlimited contact with the public and requires only occasional supervision. He also has slight to moderate pain.

...

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

...

7. The claimant was born [in] 1968 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1520(f)).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SRR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

...

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 25, 2007 through the date of this decision.

*Id.* at 17-26.

Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 4-11. However, on August 23, 2010, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1.

////

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by: 1) improperly rejecting the opinions of plaintiff's treating physicians; 2) failing to properly assess limitations found by the state agency reviewing psychologist; 3) improperly discounting plaintiff's subjective complaints; 4) improperly rejecting lay witness testimony regarding the nature and extent of plaintiff's pain and functional limitations; and 5) failing to consider the VE response to a hypothetical that accurately reflected plaintiff's limitations.

////

////

A.  The ALJ Failed to Provide Reasons for Rejecting Limitations Assessed by Plaintiff's Treating Physicians

Plaintiff argues that the ALJ erred by failing to properly credit the opinions of his treating physicians. Pl.'s Mot. Summ. J., Dckt. No. 19 at 27-28. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

////
////
////
////
////

1. Dr. Shingate[2]

Dr. Shingate was one of plaintiff's treating physicians. Dr. Shingate diagnosed plaintiff with hypertension, dyslipidemia, obesity, sleep apnea, metabolic syndrome, degenerative joint disease of the left knee, and depression. AR 532. Dr. Shingate opined that plaintiff could lift/carry 5 pounds occasionally, sit for 2 hours, stand for 30 minutes, walk for 15 minutes, and climb 6 stairs. *Id.* at 533-35. Dr. Shingate also opined that plaintiff could balance and reach occasionally, but could never crouch, kneel, push or pull. *Id.* at 535. Dr. Shingate also opined that plaintiff had moderate environmental restrictions in regard to heights, moving machinery, dust, temperature extremes, and vibrations. *Id.* at 536.

In addition to the assessment provided by Dr. Shingate, the record also contains the opinion of Dr. Serrano, an examining physician. Dr. Serrano, who examined plaintiff one time on March 10, 2008, found that plaintiff had degenerative joint disease of the left knee, as well as histories of depression, diabetes, and hypertension. *Id.* at 383. Dr. Serrano determined that plaintiff could stand and walk for 4-6 hours in an 8-hour day and could sit for 6 hours in an 8-hour day. *Id.* at 383-84. Dr. Serrano further opined that plaintiff had the ability to carry 10 pounds frequently and 20 pounds occasionally. *Id.* at 384. Dr. Serrano also opined that plaintiff had occasional postural and reaching limitations. *Id.*

The record also contains the opinion of nonexamining physician Dr. Janson, a State agency consultant. Dr. Janson's March 24, 2010 assessment opined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. *Id.* at 386.

////

---

[2] Plaintiff was treated by Drs. Kalimuthu and Shingate. Citing to a Medical Assessment Form, plaintiff argues that the ALJ failed to give proper weight to the opinion of Dr. Kalimuthu. Dckt. No. 19 at 30-36. However, a review of the record reveals that the Medical Assessment Form cited by plaintiff, which contains the medical opinion at issue, was completed by Dr. Shingate, not Dr. Kalimuthu. AR at 533-537. Accordingly, the undersigned addresses whether the ALJ impermissibly rejected the opinion of Dr. Shingate.

The ALJ assigned little weight to Dr. Shingate's assessment, while giving significant weight to Dr. Serrano and Dr. Janson's opinions. *Id.* at 22-23. Because the treating doctor's (Dr. Shingate's) opinions were contradicted by Drs. Serrano and Janson's opinions, the ALJ was required to give "specific and legitimate" reasons for rejecting Dr. Shingate's opinions. *See Orn*, 465 F.3d at 632. An ALJ may satisfy this requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusion. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citations omitted). In rejecting Dr. Shingate's opinion, the ALJ wrote, "Dr. Shingate's assessment, along with her found exertional limitations are not well-supported by the substantial evidence of record, including the claimant's own reports of activities of daily living . . . ." AR 22.

The ALJ's statement that Dr. Shingate's opinion is not well supported by substantial evidence in the record is not sufficiently specific to justify rejecting Dr. Shingate's opinion. The statement is nothing more than a boilerplate conclusion, as the ALJ fails to provide any specific examples of how the evidence undercuts Dr. Shingate's opinion. Thus, this reason is not specific enough to be legally adequate.

Furthermore, the ALJ's reference to Dr. Shingate's opinions being inconsistent with plaintiff's own reports of activities of daily living is also insufficient to satisfy his obligation to provide a specific and legitimate reason for rejecting Dr. Shingate's opinions. The ALJ's decision does not identify what activities were reported by plaintiff that are inconsistent with Dr. Shingate's opinion. Although in an earlier portion of the decision the ALJ stated that plaintiff could prepare meals, perform housework, grocery shop, take care of pets, and go on social outings, *id.* at 20, the ALJ did not specify whether these particular activities are the ones that he found to be inconsistent with Dr. Shingate's assessment. Nor did the ALJ make any attempt to explain how these, or any of plaintiff's daily activities are inconsistent with and undermine Dr. Shingate's medical opinions. Dr. Shingate opined that plaintiff could lift or carry 5 pounds

occasionally, sit for 2 hours, stand for 30 minutes, walk for 15 minutes, and climb 6 stairs. *Id.* at 533-35. These limitations, although certainly relevant to the plaintiff's functional capacity and the ultimate question of disability, would not necessarily preclude plaintiff from completing the daily activities described in the ALJ's decision.[3] Thus, the ALJ failed to provide specific and legitimate reasons for rejecting Shingate's opinion.[4]

### 2. Dr. Adeyemo

The ALJ also rejected the opinions of plaintiff's treating psychiatrist, Dr. Adeyemo. In September 2008, Dr. Adeyemo completed a mental disorder questionnaire, which reported that plaintiff complained of experiencing depression, his attitude and behavior ranged from calm and pleasant to anxious and dysphoric, and he was extremely isolative. *Id.* at 448, 450. Dr. Adeyemo determined that plaintiff had poor concentration and focus and he had minimal ability to adapt to the stresses of the work environment. *Id.* at 450. Dr. Adeyemo diagnosed plaintiff with mood disorder NOS and Obsessive Compulsive Disorder ("OCD") and stated that his prognosis was guarded. *Id.* at 451.

On March 2, 2009, Dr. Adeyemo completed an additional assessment. Dr. Adeyemo again diagnosed plaintiff with mood disorder NOS and OCD and stated that his prognosis was guarded. *Id.* at 490. Dr. Adeyemo opined that plaintiff had a fair ability to follow work rules,

---

[3] In short, an impaired person could nonetheless be able to prepare meals, perform housework, grocery shop, take care of pets, and go on social outings and still meet the criteria for disability.

[4] Defendant argues that the ALJ's rejection of Dr. Shingate's opinions was supported by substantial evidence in the record because there was no evidence that plaintiff had any degenerative problems with his lumbar spine. Def.'s Mot. Summ. J., Dckt. No. 21 at 7-8. Defendant argues that the absence of degenerative spine problems indicates that Dr. Shingate's opinion regarding plaintiff's sitting limitation was not supported by medical evidence. *Id.* However, the ALJ did not state that he relied on the absence of degenerative problems in plaintiff's spine in rejecting Dr. Shingate's assessment, and therefore this is not a proper basis for upholding the ALJ's rejection of Dr. Shingate's opinions. *See Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) ("[T]he Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion").

relate to co-workers, deal with the public, interact with supervisors, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id*. at 491, 493. She also indicated that plaintiff had a poor ability to deal with work stress, function independently, maintain attention/concentration, and understand and carry out complex instructions. *Id*.

In addition to Dr. Adeyemo's assessment, the record contains a psychiatric review technique form and a mental residual functional capacity assessment completed by Adrainne Gallucci, Psy.D, a State agency consultant. *Id*. at 362-379. Dr. Gallucci opined that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods of time, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors. *Id*. at 376-377. Dr. Gallucci also stated that plaintiff had good comprehension and memory, good concentration and persistence, adequate social functioning with limited interaction, and adequate adaptive functioning. *Id*. at 378.

As discussed above, the ALJ found that plaintiff was "slightly limited in attention, concentration, understanding, and memory." *Id*. at 19. The ALJ also found that plaintiff was "slightly limited in his ability to perform simple, routine tasks . . . .The claimant can have unlimited contact with the public and requires only occasional supervision. He also has slight to moderate pain." *Id*. Thus, the ALJ rejected some of the restrictions identified by Dr. Adeyemo, including Dr. Adeyemo's opinions that plaintiff had poor ability to deal with work stress, function independently, maintain attention/concentration, and understand and carry out complex instructions.

In giving little weight to Dr. Adeyemo's assessment, the ALJ wrote:

> In September 2008, Dr. Adeyemo indicated that the claimant did not need assistance to keep appointments. The claimant was isolative, had poor concentration and focus, and minimal ability to adapt to stressors of the work environment. Dr. Adeyemo left many areas blank on this form [Exhibit 17F]. Subsequently, Dr. Adeyemo completed an additional assessment and opined that the claimant had primarily fair ability in the areas of making occupational adjustments, making performance adjustments, and making personal and social

adjustments. However, Dr. Adeyemo opined that the claimant had a poor ability to deal with work stress; function independently; maintain concentration and attention; and understand, remember, and carry out complex job instructions. However, Dr. Adeyemo's assessment is, again, contrary to the claimant's own reports of good activities of daily living, which again indicates that Dr. Adeyemo may have relied quite heavily on the claimant's subjective complaints. Furthermore, there is the possibility that the doctor was sympathetic to the claimant, particularly since there are indications that the claimant was quite insistent regarding disability notices [*See* Exhibit 15F]. While there are indications of mental symptomatology, the substantial evidence of record simply does not support the limitations that Dr. Adeyemo's assessment suggests. Therefore, Dr. Adeyemo's assessment is given little weight.

Although Dr. Gallucci disagreed with portions of Dr. Adeyemo's opinion, Dr. Gallucci's opinion does not constitute substantial evidence that would justify rejecting Dr. Adeyemo's assessment. This is because Dr. Gallucci based her opinions on the existing medical records and did not have any independent clinical data on which to base her opinions. *See Orn*, 495 F.3d at 632 (holding that the opinion of an examining physician which relies on the same clinical findings as a treating physician's opinion cannot constitute "substantial evidence" to warrant rejecting the treating physician's opinion). Thus, the ALJ was required to provide clear and convincing reasons for rejecting Dr. Adeyemo's opinion. The ALJ's decision has not done so.

The first reason the ALJ provided for giving little weight to Dr. Adeyemo's assessment was that it is contrary to plaintiff's own reports of good activities of daily living. Again, the ALJ does not identify the specific daily activities he believes are inconsistent with Dr. Adeyemo's opinions or attempt to explain how certain activities are contrary to Dr. Adeyemo's assessment. As previously discussed, the ALJ's decision does discuss plaintiff's daily activities in another portion of the decision, but none of the daily activities identified by the ALJ are facially inconsistent with Dr. Adeyemo's opinion. It is unclear how Dr. Adeyemo's opinions that plaintiff had poor ability to deal with work stress, function independently, maintain attention/concentration, and understand and carry out complex instructions are inconsistent with plaintiff cooking meals, completing house work, and going on social outings.

////

1    The ALJ also rejected Dr. Adeyemo's opinion because it may have been based on
2 plaintiff's subjective complaints. However, the practice of psychology depends, at least in part,
3 on the subjective complaints of the patient. *See Hardt v. Astrue*, 2008 WL 349003 (D. Ariz.
4 2008) (holding that the ALJ impermissibly discounted the opinion of a treating psychologist
5 where the opinion was based on the claimant's subjective complaints because the practice of
6 psychology depends at least in part on the evaluation of the claimant's subjective reports);
7 *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2nd Cir. 2003) ("[a] patient's report of complaints,
8 or history, is an essential diagnostic tool") (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th
9 Cir. 1997)); *see also Brand v. Secretary of Dept. of Health, Education and Welfare*, 623 F.2d 523,
10 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and
11 subjective complaints.").

12    Defendant argues, however, that the ALJ properly disregarded plaintiff's assessment
13 because Dr. Adeyome relied on plaintiff's subjective complaints and the ALJ found that plaintiff
14 was not credible. Def.'s Mot. Summ. J., Dckt. No. 21 at 10. "[A]n ALJ does not provide clear
15 and convincing reasons for rejecting an examining physician's opinion by questioning the
16 credibility of the patient's complaints where the doctor does not discredit those complaints and
17 supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d
18 1194 (9th Cir. 2008). There is nothing in the record suggesting that Dr. Adeyemo disbelieved
19 plaintiff's subjective complaints. Additionally, there is evidence Dr. Adeyemo's assessment
20 included clinical observations. *See id*. at 448.

21    Furthermore, the ALJ does not unequivocally state that he rejected Dr. Adeyemo's
22 opinions because they were based heavily on plaintiff's subjective complaints; rather, the ALJ
23 wrote "Dr. Adeyemo may have relied quite heavily on the claimant's subjective complaints." *Id*.
24 at 24. The possibility that Dr. Adeyemo relied heavily on plaintiff's subjective complaints is not
25 a clear and convincing reason for rejecting Dr. Adeyemo's assessment.
26 ////

The final reason given for rejecting Dr. Adeyemo's assessment was the speculative comment that "there is the possibility that the doctor was sympathetic to the claimant, particularly since there are indications that the claimant was quite insistent regarding disability notice." *Id*. at 25. A mere possibility that Dr. Adeyemo was sympathetic to plaintiff does not constitute clear and convincing evidence. Moreover, there is no evidence that Dr. Adeyemo's knowledge that plaintiff was attempting to obtain disability insurance influenced Dr. Adeyemo's opinions. Thus, the ALJ failed to provide clear and convincing reasons for rejecting Dr. Adeyemo's assessment.[5]

### B.  Remand for Payment of Benefits

A district court's decision to remand for payment of benefits rather than for further administrative proceedings is reviewed for abuse of discretion. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where the record is fully developed and further administrative proceedings would not be useful, a district court should remand for payment of benefits. *See*, *e.g.*, *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1137-38 (9th Cir. 2011).

Specifically, the Ninth Circuit has explicitly held that a district court should remand for immediate payment of benefits if "1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence, 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*, 379 F.3d at 593, citing *Harman*, 211 F.3d at 1178; *McCartey v. Massanari,* 298 F.3d 1072, 1076-77 (9th Cir.2002); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). *See also Strauss*, 635 F.3d at 1137-38; *Varney v. Secretary of Health & Human Services*, 859 F.2d 1396 (9th Cir. 1988). This rule applies to an ALJ's improper rejection of the claimant's own testimony as well as treating or

---

[5] Defendant also argues that the ALJ gave less weight to Dr. Adeyemo's opinions because Dr. Adeyemo left blank portions of one of the assessment forms. Dckt. 21 at 10. Though the ALJ's decision states that portions of an assessment form were left blank, the ALJ did not specifically rely on this evidence in rejecting Dr. Adeyemo's opinions.

examining physician testimony. *See*, *e.g.*, *McCartey*, 298 F.3d at 1076-77 (award of benefits is mandatory where the ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony)*; Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'").

When there are outstanding issues that must be resolved in a particular claimant's case, however, remand for further proceedings is appropriate. *See*, *e.g.*, *Harman*, 211 F.3d 1172 (9th Cir. 2000) (remand for further proceedings rather than payment of benefits appropriate where physician's conclusion that the plaintiff was "totally disabled" was a medical, rather than legal conclusion, and physician's complete testimony had not been presented to the ALJ); *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009) (remand for further proceedings appropriate where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1300 (9th Cir. 1999) (requiring further proceedings to determine the date on which a claimant became disabled, after finding that disability was established by crediting claimant's and examining physician's testimony); *Strauss*, 635 F.3d at 1138 ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be").

Although Ninth Circuit panel decisions have, as explained above, repeatedly endorsed the credit-as-true rule and have held that district courts should remand for payment of benefits when the three-part test is met, at least one Ninth Circuit panel has held that district courts retain discretion in deciding whether to remand for payment of benefits or for further administrative proceedings in such a situation. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (discussing Ninth Circuit cases that appeared not to follow the credit-as-true rule, and concluding that the court must have "some flexibility in applying the crediting as true theory"); *Vasquez*, 572

F.3d at 594 (discussing a "split in authority" in the Ninth Circuit over whether the credit-as-true rule is mandatory or discretionary, but not resolving the conflict); *id.* at 602-05 (Judge O'Scannlain, in dissent, calling for *en banc* review of the credit-as-true rule to resolve the "irreconcilable conflict" between *Connett* and the *Benecke* line of cases).

District courts are thus commanded by the *Benecke* line of cases to remand for payment of benefits if the three-part test discussed above is met, but simultaneously instructed by *Connett* that they need not remand for payment of benefits under the same circumstances. As the *Benecke* line of authority appears to require this court to remand for payment of benefits if the precedent conditions are met, and the *Connett* line of cases merely permits, but does not require, this court to remand for further proceedings in the same circumstances, this court seems bound to apply the *Benecke* line of cases. Indeed, *Connett* does not explain how this court should decide whether to apply the credit-as-true rule, but merely suggests that we have flexibility in choosing which claimants receive benefits on remand when the same precedent conditions are met. Such an approach invites arbitrary decision-making and impermissible re-weighing of the medical evidence by this court. Thus, until the Ninth Circuit resolves this issue en banc, this court will follow the *Benecke* test.

Under the *Benecke* test, plaintiff is entitled to have the matter remanded for payment of benefits. As already explained above, the ALJ failed to provide legally sufficient reasons for rejecting the treating physicians' assessments. Furthermore, it is clear from the evidence in the record that the ALJ would have been required to find plaintiff disabled if he had credited the treating physicians' opinions. During the May 21, 2009 hearing, plaintiff's counsel asked the VE hypothetical questions regarding the availability of jobs for an individual possessing the limitation assessed by Drs. Shingate and Adeyemo. Counsel asked, "Referring to the Complete Medical Report Mental, let us assume a person of the claimant's age, education, and past relevant work, with poor ability to deal with work stress; poor ability to function independently; and poor ability to maintain attention, concentration. Could you identify any jobs?" AR 79. The VE

responded, "No, I don't believe so with those many poors, no." *Id*. Plaintiff's counsel also asked, "And physically, if we have a person essentially limited to five pounds or less; sitting in an eight hour day, two; standing and walking, one or less. Could you identify any jobs?" *Id*. The VE responded, "That's less than eight hours. No, I couldn't." *Id*.

It is clear from this evidence that had the ALJ credited Drs. Shingate and Adeyemo's assessments, he would have concluded that plaintiff's physical and mental limitations precluded him from performing other work. Because the ALJ would have been required to find plaintiff disabled at the fifth step of the sequential evaluation process, plaintiff is entitled to have the matter remanded for payment of benefits.[6]

IV. Conclusion

The court finds that the ALJ erred in failing to provide the legally required reasons for rejecting treating physicians' opinions. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in plaintiff's favor; and

4. This action is remanded for payment of benefits.

DATED: March 26, 2012.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[6] Because the court finds that the ALJ's failure to provided legally sufficient reasons for rejecting treating physicians' assessments entitles plaintiff to payment of benefits, the court declines to address plaintiff's other arguments for summary judgment.